## A98A2006. BLOSFELD v. HALL.
(511 SE2d 196)

JOHNSON, Chief Judge.

Connie Blosfeld sued Bradley Hall for injuries allegedly sustained in a vehicle collision. The parties stipulated to Hall's negligence in causing the accident, and the trial court so instructed the jury. However, the parties did not stipulate to proximate cause and damages, and the jury was instructed that it was to determine whether Hall's negligence was the proximate cause of Blosfeld's injuries. The jury returned a verdict in favor of Hall. Blosfeld filed a motion for new trial on the grounds that the verdict was contrary to the evidence, against the weight of the evidence, and inconsistent with the preponderance of the evidence. The trial court denied Blosfeld's motion, and she appeals.

"Where a jury returns a verdict and it has the approval of the trial judge, the same must be affirmed on appeal if there is any evidence to support it as the jurors are the sole and exclusive judges of the weight and credit given the evidence. The appellate court must construe the evidence with every inference and presumption in favor of upholding the verdict, and after judgment, the evidence must be construed to uphold the verdict even where the evidence is in conflict. As long as there is some evidence to support the verdict, the denial of [Blosfeld's] motion for . . . new trial . . . will not be disturbed." (Citations and punctuation omitted.) *Southeastern Security Ins. Co. v. Hotle*, 222 Ga. App. 161, 162 (1) (473 SE2d 256) (1996).

We find there is sufficient evidence to support the verdict. Blosfeld claimed the following injuries: migraine headaches, leg and hip injuries necessitating surgery, sacroileitis and low back injuries necessitating surgery, neck and shoulder injuries, leg pain, and emotional problems. Much of the evidence as to the cause of her injuries was in conflict. For example, Blosfeld testified that when the collision occurred, she hit her head on the dashboard and her legs must have hit something. On cross-examination, she admitted having testified in her deposition that she told emergency room physicians she hit her knees, not her head, on the dashboard. She also acknowledged on cross-examination that there is no mention in the emergency room records about her knees or any other part of her lower body hitting any part of the interior of the car.

Similarly, Blosfeld testified on direct examination that when she went to see her regular treating physician the day after the accident,

her primary complaints were her head and lower back. She conceded, however, that the doctor's records indicated she complained of shoulder and neck pain. Likewise, while Blosfeld testified that she began experiencing problems with her sacroiliac and low back after the accident, she admitted on cross-examination that she had been diagnosed with sacroileitis, a joint disorder in the lower back, as early as two and one-half months before the accident.

There was also evidence supporting alternate causes of Blosfeld's injuries. Blosfeld admitted on cross-examination that she had seen her primary treating physician at least 90 times in the three and one-half year period preceding the accident. While Blosfeld complained that the head injury brought pain similar to a migraine headache, she admitted on cross-examination that she had previously received treatment for migraine headaches.

Blosfeld testified about leg and hip injuries that necessitated surgery on both hips. However, she also testified that she fell in the bathtub approximately one and one-half years before her automobile accident, landing on her buttocks. This fall caused pain in her back and legs and was serious enough that she asked to be hospitalized. The pain from this fall persisted throughout the year and was sometimes so severe that Blosfeld could not walk. According to Dr. Allan Lippitt, who operated on Blosfeld's sacroiliac joint following the automobile accident, it is unusual for a rear end collision to cause hip fractures such as those that necessitated Blosfeld's surgery. Thus, the jury could properly have concluded that these injuries were caused by a fall in the bathtub.

As for Blosfeld's complaints of sacroileitis and low back pain that required surgery, Blosfeld admitted that she had been diagnosed with sacroileitis prior to the accident and admitted that she had several times complained of the same exact pain in her lower back prior to the date of the car accident. Sacroileitis was the same diagnosis that Dr. Lippitt made that necessitated Blosfeld's surgery. Dr. Lippitt testified that he could not state with a reasonable degree of medical certainty that the car accident caused Blosfeld's sacroiliac condition. According to Dr. Lippitt, even though he has seen this type of injury in accidents like Blosfeld's, it would be more common to have this type of injury as a result of falling on one's buttocks. In addition, Blosfeld's primary treating physician testified he could not state with a reasonable degree of medical certainty what symptoms were related to the automobile accident and what symptoms were not.

As for Blosfeld's neck and shoulder injuries, there was sufficient evidence from which the jury could have found that these injuries were proximately caused by an earlier car accident in which Blosfeld was involved. Blosfeld testified that as a result of her prior car accident, she was still having trouble with her neck and left shoulder.

These were the same two symptoms of which she complained the day after the accident.

Blosfeld's complaint that the accident at issue caused pain in her legs and feet was also contradicted by the evidence. Blosfeld testified that in 1992 she was exposed to toxic chemicals and that this exposure caused fibromyalgia to develop. Fibromyalgia caused pain in several parts of Blosfeld's body, including her legs. While Blosfeld attempted to differentiate the pain, testifying that the pain caused by the accident was a sharp pain rather than a muscle ache, she later described the pain she was still experiencing from the accident as "like a dull headache."

As for any emotional problems which Blosfeld experienced causing her a diminished enjoyment of life, Blosfeld testified that before the accident, she saw a psychologist related to her exposure to toxic chemicals. She further admitted that she was diagnosed with post-traumatic stress disorder as far back as March 1993 and again in October 1994, one month before the accident.

In Georgia, a plaintiff cannot recover for injuries sustained as a result of a defendant's negligence unless the plaintiff shows that the defendant's negligence was the proximate cause of the injury. See *Pointer v. Cooley*, 191 Ga. App. 548 (1) (382 SE2d 359) (1989); *McBryde v. Roberts*, 160 Ga. App. 416, 419 (1) (287 SE2d 349) (1981); *Hughes v. Newell*, 152 Ga. App. 618, 620 (2) (263 SE2d 505) (1979). "[E]ven if plaintiff has established that she has suffered certain substantial physical injuries and even if the nature of these injuries is consistent with her assertion they were the result of a motor vehicle collision, the evidence does not require a conclusion that plaintiff's injuries were proximately caused by defendant's negligence." *McBryde*, supra at 416-417.

"The subject of any injury [Blosfeld] sustained in this present case was fully explored by both sides. On appeal, we do not weigh evidence, for the jury has already done that; and once the jury has done so, every inference and construction in the evidence is indulged in favor of the verdict so as to uphold it. [Cits.]" *Pointer*, supra. Based on the evidence, the jury was authorized to conclude that Blosfeld's injuries were not proximately caused by Hall's negligence. The trial court did not err in denying Blosfeld's motion for new trial.

*Judgment affirmed. Smith and Barnes, JJ., concur.*

DECIDED JANUARY 26, 1999 —
RECONSIDERATION DENIED FEBRUARY 8, 1999.

*Thornton, Leff & Elsner, Robert A. Elsner*, for appellant.

*Smith, Welch & Brittain, E. Gilmore Maxwell*, for appellee.